IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WESTERN SURETY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:19-CV-554 |
| | ) |
| WESSAL INVESTMENTS, INC.; | ) |
| LASSEW, LLC; OMAR U. WESSAL; | ) |
| TAWAB WESSAL; and ROSHNA HABIB, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge

Plaintiff, Western Surety Company ("Western Surety"), brings this action against Wessal Investments, Inc. ("Wessal Investments" or "Wessel") and affiliated individuals and entities (collectively "Defendants"), alleging various state claims. (ECF No. 1.) Plaintiff primarily seeks reimbursement for a $99,999.00 payment it made to a third party, Auburn Construction, Inc. ("Auburn") on behalf of Wessal Investments. (*See id.*) Before the Court is Defendants' Motion to Dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 6.) For the reasons that follow, the Court denies Defendants' motion.

I.    **BACKGROUND**

Wessal Investments is a North Carolina corporation directed by Omar and Tawab Wessal. (ECF No. 1 ¶¶ 2, 6.) In 2015, Wessal hired a general contractor, Auburn, to make improvements to its real property in Greensboro, North Carolina ("the Greensboro

1

property"). (ECF Nos. 1-1 at 2; 1-5 at 2.) On June 20, 2016, Auburn placed a lien on the Greensboro property to secure a $88,454.49 debt Wessal Investments owed it for unpaid work on the property. (ECF No. 1-5 at 2.) A couple of weeks later, on August 12, 2016, Auburn filed suit against Wessal Investments in Guilford County Superior Court for (1) breach of contract, (2) unjust enrichment, and (3) to enforce its claim of lien on the Greensboro property. (*Id.*)

On September 9, 2016, Wessal sought a release of lien bond from Western Surety to remove the lien on the Greensboro property. (ECF No. 1 ¶ 10.) Pursuant to the terms of Wessal's application for bond, it agreed to "exonerate, indemnify and save Western Surety harmless from and against every claim, loss, damage, liability, cost, charge, bond premium, suit, judgment, attorney's fee, and expense which Western Surety incur[s] in consequence of issuing bonds on behalf of . . . Wessal Investments" and further agreed that Western "had the right to settle claims in its discretion and [to] recover the sum paid in settlement from . . . Defendants." (*Id.*) Thereafter, on September 13, Western issued a release of lien bond ("the Bond") bonding off Auburn's claim of lien on the Greensboro property. (ECF Nos. 1 ¶ 12; 1-3 at 2.) The Bond provided:

> That we, Wessal Investments, Inc. as Principal[ ], and [Western] . . . as Surety, are held and firmly bound unto [Auburn], as Obligee, in the sum of not to exceed [$110,568.12], for payment of which, well and truly to be made, we bind ourselves and our legal representatives, firmly by these presents.
>
> The condition of this obligation is such that WHEREAS the Principal[ ] desires to have the lien of the Obligee [on the Greensboro property] . . . released and gives this bond pursuant to N.C. Gen. Stat. § 44A-16(6).[1]

---

[1] N.C. Gen. Stat. § 44A-16(6) was later renumbered and now appears as N.C. Gen. Stat. § 44A-16(a)(6). (*See* ECF No. 7 at 10 n.2.)

> Now, therefore, if the Principal[ ] will pay the amount that is finally determined to be due to the Obligee as lien claimant in satisfaction of such lien, then this obligation to be void; otherwise, to remain in full force and effect. In no event shall the liability of the Surety exceed the amount of this bond.

(ECF No. 1-3 at 2.)

Two months later, on December 12, 2016, Auburn and Wessal Investments agreed to arbitrate the claims which had been filed in Guildford County court. (*See* ECF No. 1-5 at 3–4.) On June 27, 2017, the arbitrator awarded Auburn $88,278.37 in contract damages plus interest, attorneys' fees, and the right to enforce its claim of lien on the Greensboro property. (*Id.* at 3.) On November 7, 2017, the Guilford County court issued a Judgment which confirmed in part and vacated in part the arbitrator's award. (ECF Nos. 1 ¶ 19; 1-5 at 5–6.) The Judgment granted Auburn's motion to confirm the arbitration award in the principle amount of $88,278.37 plus interest against Wessel for its breach of contract for Auburn's work on the Greensboro property but vacated "[t]he provisions of the [arbitrator's award] which awarded lien relief to [Auburn]." (ECF No. 1-5 at 5.) The Court made the finding in its Judgement that Auburn's lien claim "did not exist as a pending claim on December 12, 2016 when the Court stayed th[e] action pending arbitration . . . nor on February 7, 2017 at the time [Auburn] fil[ed] its Demand for Arbitration . . . the lien claim having been previously discharged and cancelled pursuant to NCGS §44A-16(6), by the posting of a bond by Defendant." (*Id.* at 3.) The Court further found that Auburn "did not submit its lien claim to the Arbitrator, as [Auburn] made no claim for any nonmonetary award in its Demand for Arbitration." (*Id.*) Thus, according to the Judgment, Auburn's lien claim, "was not properly before the Arbitrator" and "was extinguished prior to the instigation of arbitration." (*Id.* at 3–4.) The Judgment then concluded as a matter of law that the "Arbitrator had no authority to

3

award a non-monetary remedy," and decreed that the "provisions of the Arbitration Award which awarded lien relief" to Auburn be vacated. (*Id.* at 4–5.)

Following the entry of the Judgment in the underlying litigation, Wessal Investments failed to pay its obligation to Auburn. (*See* ECF No. 1 ¶ 20.) Auburn then demanded that Western "pay the Judgment amount pursuant to the terms of the Bond." (*Id.* ¶ 21.) When Western demanded that Wessal Investments pay Auburn, Wessal Investments refused. (*Id.* ¶ 22.) By this time, Wessal Investments was insolvent. (*See id.* ¶ 16.) Plaintiff alleges that Wessal Investments had long ago rendered itself insolvent through a fraudulent conveyance. (*Id.* ¶¶ 13–16.) According to Plaintiff's complaint, on November 30, 2016, shortly before the start of arbitration, Omar and Tawab Wessal formed a new LLC, LASSEW.[2] (*See id.* ¶ 13.) Further, the complaint alleges that the next day, without informing Western or Auburn, Wessal Investments transferred all its assets to LASSEW for no taxable consideration. (*Id.* ¶¶ 14–18.)

Consequently, on April 24, 2018, Western paid Auburn $99,999.00 "in satisfaction of [Auburn's] Judgment against Wessal Investments and claim against [Western's] Bond." (*Id.* ¶ 23.) On May 29, 2019, Western filed suit claiming that the terms of Defendants' application for bond obligate them to reimburse Western. (*See id.* ¶ 25.)

## II. STANDARD OF REVIEW

A motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan*

---

[2] LASSEW is Wessal backwards.

4

*River Dockside Seafood*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). When considering a Rule 12(b)(6) motion, the court must accept all factual allegations in the complaint as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and construe all factual allegations in the light most favorable to the plaintiff, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the Court need not accept as true "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (internal quotations omitted). While a court's evaluation of a Rule 12(b)(6) motion to dismiss is "generally limited to a review of the allegations of the complaint itself," a court can properly consider documents "attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

### III. DISCUSSION

Here, Plaintiff's complaint sets forth claims against Defendants for (1) statutory and (2) equitable subrogation; (3) fraudulent conveyance; (4) breach of fiduciary duty; (5) unfair trade practices; (6) breach of contract; and (7) specific performance. (ECF No. 1 ¶¶ 26–57.) In their motion to dismiss, Defendants argue—and Plaintiff appears not to contest—that "all causes of action in this case depend on whether Plaintiff can obtain either indemnification or subrogation." (ECF No. 7 at 5 n.1.) Defendants contend Plaintiff has failed to state a cognizable claim because Plaintiff acted unreasonably and as a volunteer when it paid Auburn and that it therefore has no right to indemnification or subrogation. (*See* ECF No. 6 at 1.) As

5

explained below, because the Court concludes that Defendants have failed to establish that they are entitled to judgment as a matter of law as to the issues of indemnification and subrogation, Defendants' motion will be denied.

    A. Indemnification

Defendants argue that "Plaintiff can only be indemnified if it acted reasonably in paying [Auburn's] lien claim" and that "[i]t was unreasonable for Plaintiff to [pay Auburn] after a court conclusively determined Auburn . . . could not enforce its lien." (ECF No. 7 at 6, 8.) Plaintiff counters that sureties may settle claims asserted against their principals as long as they do so in good faith and that under the circumstances of this case, Western "made a reasonable business decision to negotiate a resolution of Auburn['s] claim." (*See* ECF No. 14 at 10–17.)

Courts in North Carolina have consistently held that a surety is entitled to reimbursement for any payment it makes pursuant to an indemnification agreement so long as the payment is made in good faith. *See Fid. & Guar. Ins. Co. v. Constr. Advantage, Inc.*, No. 1:08-CV-460-GCM, 2010 WL 726024, at *5 (W.D.N.C. Feb. 25, 2010) ("[T]he only exception to a surety's right to reimbursement is 'when the payment by the surety has been made through . . . bad faith or fraud.'") (quoting *Fid. & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983); *N.Y. Marine & Gen. Ins. Co. v. Beck Elec. Co.*, No. 3:05 CV 373-H, 2007 WL 160689, at *7 (W.D.N.C. Jan. 16, 2007) ("[T]he only exception to a provision in an indemnity agreement requiring a contractor to repay a surety for claims paid on bonds is . . . fraud or lack of good faith." (internal quotation omitted)); *Old Republic Sur. Co. v. Reliable Hous., Inc.*, No. COA01-1021, 2002 WL 31687287, at *2 (N.C. Ct. App. Dec. 3, 2002) ("[T]he exception to upholding these strict indemnity agreements occurs only in situations where the

payment has been made through fraud or lack of good faith." (internal quotations omitted)). This is a forgiving standard: a surety's payment is made in good faith if it is not made with an "improper motive." *See First Nat'l Ins. Co, of Am. v. Sappah Bros., Inc.*, 771 F. Supp. 2d 569, 573–74 (E.D.N.C. 2011).

Here, Defendants do not contend that Plaintiff paid Auburn in bad faith or with an improper motive. Nor do Defendants appear to contest that the indemnity agreement between Western and Wessal Investments explicitly permitted Western, in its discretion, to settle claims against Wessal Investments and then to recover from Defendants for those settlements. (*See* ECF No. 1 ¶ 10.) In line with the precedent cited by the Court above, this is a sufficient showing by Western on the issue of indemnification for Western's claim to survive Defendants' motion to dismiss. Moreover, even if, as Wessel argues, the law requires Western to establish that it acted reasonably in paying Auburn,[3] because this Court is unable to conclude that Western acted unreasonably in settling the claim with Auburn as a matter of law, Defendants' motion still fails.

Defendants allege it was unreasonable for Western to pay Auburn as a matter of law because "Plaintiff's exposure [to Auburn] was limited to a successful lien claim by Auburn" and by the time Plaintiff paid Auburn, "the Guilford County Superior Court [had already] determined that [Auburn] did not prevail on its lien claim." (*See* ECF No. 7 at 8–9.) Plaintiff replies, in part, that though the Guilford County court held that Auburn had no claim of lien on the Greensboro property itself, the Judgment "did not hold that Auburn . . . had no claim against the Bond and/or Western Surety." (ECF No. 14 at 15.)

---

[3] At this stage of the litigation, the Court need not definitively resolve whether North Carolina requires a surety's payment to an obligee to be reasonable.

7

The Guilford County Judgment acknowledges, as does Plaintiff, that the lien claim against the Greensboro property itself had "been previously discharged and cancelled pursuant to [N.C. Gen. Stat.] §44A-16(6) by the posting of a bond by [Wessal]" prior to the Court entertaining the claim. (ECF Nos. 1-5 at 3; 14 at 15.) Clearly the Judgment vacated the portion of the Arbitrator's award allowing Auburn to enforce its claim of lien on the Greensboro property, (ECF No. 1-5 at 5), however, it did so based on the fact that the lien claim was never before the arbitrator and thus the arbitrator was found by the court to have exceeded his authority, (*id.* at 3). It appears Defendants took this vacatur to mean that Wessal Investments prevailed against Auburn on Auburn's lien claim. Coupled with this interpretation of the Judgment, Defendants read the language in the Bond stating that "Principal[ ] will pay the amount that is finally determined to be due to [Auburn] *as lien claimant in satisfaction of such lien*," to mean that Wessal Investments faced no liability to Auburn on Auburn's lien claim and thus that Western unreasonably paid Auburn on a claim for which its principal was not liable. (*See* ECF Nos. 1-3 at 2 (emphasis added); 7 at 8–13.) However, this argument is not persuasive. The Judgment's references to a "lien claim" appear to apply only to Auburn's claim on the Greensboro property itself. (*See* ECF No. 1-5 at 3.) The Judgment, however, does not speak directly to the viability of Wessel's underlying indebtedness to Auburn that precipitated the lien claim or to Auburn's rights against the Bond or against Western Surety regarding the same. (*See* ECF No. 1-5.) The Judgment is at best ambiguous or completely silent as to these issues. As a result, Western could have reasonably concluded that Wessal Investments was still liable for any claim Auburn made on the Bond. Furthermore, with Wessel Investments now insolvent, Western could have reasonably believed it faced protracted litigation if it refused to

8

honor Auburn's demand for payment under the bond with no ability to rely on representations by Wessel Investments in light of the serious allegations of fraud against them as outlined in Western's complaint. Western's decision to pay Auburn therefore appears to have been a reasonable exercise of business judgment, not conduct from which the Court could conclude that Western acted unreasonably in making the decision to pay Auburn as a matter of law.

Accordingly, the Court concludes that Defendants have failed to establish, as a matter of law, that Western acted in bad faith, with improper motive, or unreasonably in paying Auburn, and therefore Defendants' motion to dismiss Plaintiff's claim for indemnification will be denied.

B. Subrogation

"[T]he doctrine of subrogation allows a party who has compensated a creditor under the color of some obligation, to step into the shoes of the creditor, thereby succeeding to the creditor's rights to proceed against the debtor for reimbursement." *In re 11 N.C.A.C. 12.0319*, 517 S.E.2d 134, 137 (N.C. Ct. App. 1999). "The remedy is highly favored and liberally applied." *Trs. of Garden of Prayer Baptist Church v. Geraldco Builders, Inc.*, 336 S.E.2d 694, 698 (N.C. Ct. App. 1985).

Here, Defendants argue that any of Plaintiff's claims that are predicated on its right to subrogation fail because Western is not entitled to subrogation. (*See* ECF No. 7 at 17–20.) Assuming for the purposes of this motion that Defendants are correct that North Carolina's statutory and equitable remedies of subrogation share the same elements, (*see* ECF No. 15 at 9–10), Plaintiff must satisfy the five-part test articulated in *In re Spirakis* to state any claim that hinges on its right to subrogation. No. 13-07462-8-SWH, 2017 WL 4898172, at *4 (Bankr.

E.D.N.C. Oct. 30, 2017). Per the test, a subrogee is entitled to subrogation when five conditions are met:

> (1) a payment was made by a subrogee to protect [its] own interest; (2) the subrogee must not have acted as a volunteer; (3) the debt paid must have been one for which the subrogee was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not work any injustice to others.

*Id.* (collecting cases). Defendants concede the third and fourth conditions are present, so the Court must determine whether the first, second, and fifth are also present. (*See* ECF No. 7 at 17.)

The first prong—a payment made by a subrogee to protect its own interest—requires the would-be subrogee to show that it (1) paid the debt of another to (2) protect its own interest. *See In re Spirakis*, 2017 WL 4898172, at *4–5. The interest the subrogee seeks to protect need not be "real"; it can be "supposed." *See id.* at *4 (quoting *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 176 S.E.2d 751, 755 (N.C. 1970)); *see also Garden of Prayer Baptist Church*, 336 S.E.2d at 698. Here, Western paid a debt—the Judgment entered against Wessal Investments—and did so under the belief that it was protecting its own interest. Thus, Plaintiff appears to have established the first prong.

"Th[e] second subrogation factor," that the plaintiff is not a mere volunteer, "is often interrelated with the first, as a subrogee making a payment to protect his or her own interests pursuant to the first factor is commonly under a duty, and not a mere volunteer, for purposes of the second factor." *In re Spirakis*, 2017 WL 4898172, at *5. A volunteer is an individual "who, without any moral or other duty, pays the debt or discharges the obligation of another." *Id.* (quoting *Nationwide Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 365 S.E.2d 677, 678 (N.C. Ct.

10

App. 1988)). This term "should be narrowly and strictly interpreted to the end that the doctrine of subrogation may be expansively and liberally applied." *See Boney v. Cent. Mut. Ins. Co.*, 197 S.E. 122, 126 (N.C. 1938). An individual who makes a payment "in good faith and under an erroneous impression of one's legal duty is not a mere volunteer." *In re Spirakis*, 2017 WL 4898172, at *5 (cleaned up) (quoting *Nationwide Mut. Ins. Co.*, 365 S.E.2d at 678). Here, Western was either (a) legally obligated to pay Auburn or (b) under the mistaken but good faith belief that it was obligated to pay Auburn. In either scenario, it was not a volunteer.

The fifth and final subrogation factor asks "whether subrogation would work to the injustice of others." *Id.* at *7 (citing *Fredrick v. S. Fid. Mut. Ins. Co.*, 20 S.E.2d 372, 375 (N.C. 1942)). "In evaluating this factor, a court is to consider the actual effect of subrogation under the facts of an individual case." *Id.* (citing *Bank of N.Y. Mellon v. Withers*, 771 S.E.2d 762, 765 (N.C. Ct. App. 2015)). Here, Defendants argue that it would be unjust to allow subrogation as the remedy would "resurrect" the lien claim it had already defeated, creating "liability for the Defendants where none previously existed." (*See* ECF No. 7 at 19–20.) Plaintiff characterizes this position as "truly ironic" and argues that if it had not paid Auburn, no party would have satisfied Auburn's valid judgment. (*See* ECF No. 14 at 17–18.) Looking at the actual effects of subrogation in this case, Defendants might be forced to pay Western roughly the amount of the judgment Auburn received against them. This would be perfectly fair to Plaintiff and Auburn and cannot be considered unfair to Defendants as they received a valuable service (Auburn's labor) in exchange for that money. *Cf. Henry Angelo & Sons, Inc. v. Prop. Dev. Corp.* 306 S.E.2d 162, 168 (N.C. Ct. App. 1983) (holding that in the suretyship context, "[j]ust and equitable principles . . . require that . . . those who willingly gather unto

11

themselves all the fruits of bargains fairly made . . . but look for technical loopholes through which to squirm when called upon to meet the burdens agreed to cannot and should not be aided by our law").

The Court concludes that Defendants have failed to establish that Plaintiff is not entitled to subrogation as a matter of law and therefore Defendants' motion to dismiss on this issue must be denied.

## IV. CONCLUSION

Because the Court cannot conclude at this stage that indemnification or subrogation are foreclosed to Plaintiff, it denies Defendants' motion and enters the following:

### ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss, (ECF No. 6), is DENIED.

This, the 16th day of March 2020.

/s/ Loretta C. Biggs
United States District Judge